IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANICE ENGLE, n.k.a. | : | |
| JANICE KAYLOR, | : | Civil Action No. 1:06-CV-01093 |
|     Plaintiff | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| MILTON HERSHEY SCHOOL, | : | |
|     Defendant | : | |

## MEMORANDUM

Before this Court is Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 3.) The parties have submitted briefs (Doc. Nos. 6, 13, 15) and the motion is ripe for disposition.

**I.   BACKGROUND**

    **A.   Factual Background**

The following facts are taken in light most favorable to the Plaintiff and are presumed true for the purpose of the instant motion to dismiss:

        **1.   Engle's employment**

In August 1997, Plaintiff Janice Engle was hired as a food-service worker for Defendant Milton Hershey School ("MHS") in Hershey, Pennsylvania. As a food-service worker, her primary duties involved the preparation of meals for students and staff and catering. These duties demanded certain physical attributes including the capacity to lift heavy objects, stand for 8-10 hours per day, work in extreme temperatures, and use her hands for prolonged periods. Engle was hired as an hourly employee, and received benefits including disability insurance and health coverage, life insurance, and the right to participate in a 401(k) plan.

In 1998, Engle was diagnosed with fibromyalgia syndrome. As her condition worsened,

she increasingly suffered from chronic pain and fatigue. She also began suffering from severe depression due to the pain caused by her fibromyalgia. Further adding to her condition, exposure to extreme temperatures exacerbated her symptoms.

Though aware of her condition, MHS allegedly did not attempt to accommodate Engle by, for example, placing her on "light duty" (in the bake shop) as recommended by her physician. Instead, according to Engle, starting in 2003, she became the victim of "a pattern of harassment and intimidation and belittling of Plaintiff and her condition. . . . " (Compl. ¶ 8.) Particularly insensitive to her condition were her supervisors Tim Long and Karen Lark.

Long and Lark forced Plaintiff to "use French knives while wearing hand/wrist braces" (Compl. ¶ 12), and threatened to have her fired for insubordination if she did not. When Plaintiff worked on light duty, Long and Lark saw to it that Plaintiff worked more than her co-workers. Conversely, on at least one occasion, Long insisted that Engle "put her arm in her apron because he didn't want to see it out in case anyone walked by and thought she was using it." (Id.) Long and Lark ignored Engle and would often respond rudely to her questions. They overloaded her with work, causing her to miss breaks, and routinely blamed her for shortages in supplies or ingredients.

On May 10, 2004, the situation reached a denouement. The air-conditioning unit in the kitchen did not work, and the heat became excruciating. Overwhelmed, Engle removed her heavy chef's coat. Long demanded that she re-place her coat and told her that if she passed out from the heat he would "walk over her." (Compl. ¶ 11.) Engle further alleges that:

> It was brought up on May 10, 2004, by Mr. Long that Plaintiff was supposed to tell Ms. Lark is [sic] she was not feeling well. Both Mr. Long and Ms. Lark were aware of the extreme heat and the trips Plaintiff was making to the restroom to try to cool off. That day they

>were running short staffed. There was no union representative there that day, which in the past has been a ritual for harassment of employees in the kitchen. If Plaintiff did advise that she was not feeling well she either received a shrug of the shoulders of "What do you want me to do about it" in response. Mr. Long and Ms. Lark then confronted Plaintiff and told her "You have to come and tell us that you are not feeling well, do you understand?". They repeated that sentence about 8-10 times until Plaintiff finally told them to leave her alone and stop belittling her.

(Compl. ¶ 12.) Engle then left work.

The next day, she returned and asked if MHS would allow her to work without wearing the chef's coat if she obtained a doctor's note. A representative of MHS advised her that such a note would not be honored. Nevertheless, while she attempted to work that day, she ultimately "could not tolerate the heat in the kitchen." (Compl. ¶ 13.) On May 13, 2004,[1] Engle's rheumatologist Dr. Trostle advised her not to return to work.

### 2.    Engle's applications for benefits

Engle received treatment for her fibromyalgia condition from Dr. Trostle, psychiatric treatment for her depression from Dr. M. Corazon Fernando, and general treatment from her family doctor, Dr. James Bryan. On May 13, 2004, upon the advice of her doctors that she should not return to work, Engle made a claim for short-term-disability benefits pursuant to a self-insured plan provided by MHS and administered by a third party. On August 31, 2004, her application was approved and later extended until October 10, 2004. She also sought and received Social Security Disability benefits.[2]

---

[1] The May 2005 dates indicated in paragraph 14 of the complaint are typographical errors. See (Doc. No. 13, at 7.)

[2] Although the complaint is silent as to whether Engle received Family and Medical Leave Act ("FMLA") benefits, Exhibits 2 and 3 attached to Engle's complaint indicate that she

On September 15, 2004, Dr. Trostle submitted his diagnosis that Engle was unable to work "due to her severe pain and fatigue associated with the fibromyalgia syndrome, carpal tunnel syndrome, depression and generalized osteoarthritis." (Compl. ¶¶ 20-21.)

Two days later, Engle applied for long-term-disability ("LTD") benefits pursuant to a group policy offered by MHS and administered by a third party. Her application for LTD benefits was denied in November 2004, and Engle appealed the adverse decision.

### 3. Post-Denial Events

At some point after Engle's LTD benefits were denied, Barbara Malecki, MHS's manager for employee benefits and services, contacted Engle. Malecki told Engle that MHS expected her to return to work on or about November 3, 2004. Engle responded that she would be unable to return and that an appeal of the decision to deny her LTD benefits was pending. Malecki then advised that Engle that she could elect to use accumulated paid time off and vacation time during the appeal's pendency if she so chose.[3] Engle did so.

Meanwhile, Engle's appeal for LTD benefits dragged on. On December 2, 2004, Malecki sent Engle a letter informing her that her paid-time-off benefits would expire on December 3, 2004, and that failing to report to work on the following Monday, December 6, 2004, would result in her termination. In response, Engle contacted Malecki and repeated her

---

fully exhausted her FMLA benefits on August 8, 2004.

[3] Engle alleges that "Defendant's actions, through Ms. Malecki, were in direct contravention to the employee manual which provides that an employee returning to work from a medical leave must present medical clearance from the employee's treating physician stating that the employee is fit to resume work." (Compl. ¶ 46.) As stated above, Engle's treating physician indicated that Engle's condition prevented her from returning. Thus, according to Engle, the proper course of action for MHS would have been to "advise her that she needed to obtain doctor's clearance." (Compl. ¶ 48.)

concerns that she could not report to work and that her LTD-benefits appeal remained pending.

Because Engle had otherwise exhausted her benefits, MHS made a "non-precedential" decision to place her on unpaid leave until March 7, 2005. MHS further informed her that she was no longer entitled to medical benefits and that she would be required to reapply for her previous position as a cook. On January 11, 2005, Engle's LTD-benefits appeal was denied and Engle filed a complaint in federal district court challenging the decision.[4]

On March 7, 2005, MHS terminated Engle's employment.

### B. Procedural Background

On April 28, 2006, Engle filed a complaint in the Dauphin County Court of Common Pleas of the Commonwealth of Pennsylvania asserting five state-law claims: (1) wrongful discharge; (2) retaliation; (3) breach of contract; (4) harassment; and (5) negligence. On May 30, 2006, MHS filed a notice of removal in this Court pursuant to 28 U.S.C. § 1441, on the grounds that Count II of the complaint is completely preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") and that Count I of the complaint seeks to enforce claims or rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

On June 2, 2006, MHS moved to dismiss Engle's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 3.) Both parties submitted briefs (Doc. Nos. 6, 13, 15) and the motion is ripe for disposition.

## II.   JURISDICTION

---

[4] The parties to that action apparently settled these claims out of court. See Engle v. Life Ins. Co. of Am., No. 05-621 (M.D. Pa. Oct. 3, 2005) (order dismissing without prejudice due to settlement).

Before addressing the merits of the motion to dismiss, the Court recognizes that a federal district court has a continuing obligation to determine whether it has subject-matter jurisdiction in a removal case. Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995). Accordingly this Court in an order dated October 17, 2006, directed the parties to brief the issue of subject-matter jurisdiction. (Doc. No. 20.) Both parties submitted briefs, and the Court is now satisfied that it has jurisdiction because the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., completely preempts Engle's retaliation/adverse-employment-decision claim in Count II of the complaint.

### A.     The well-pleaded-complaint rule

On the face of her complaint, Engle does not allege any federal causes of action.[5] Ordinarily, under the well-pleaded-complaint rule a case cannot be removed to a federal court (absent diversity jurisdiction) when a plaintiff's complaint does not contain federal-law claims. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62 (1987). But a recognized exception to the well-pleaded-complaint rule exists when a plaintiff's state-law claim is "completely" preempted by federal law – in this case, ERISA. Id. at 63-64; accord Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968) (holding that state claims completely preempted under § 301 of the Labor Management Relations Act are subject to removal to federal district courts). Thus, if any of Engle's claims are completely preempted by ERISA, then the well-pleaded-complaint rule does not apply, and this Court has jurisdiction. Metropolitan Life, 481 U.S. at 63-64; Dukes v. U.S. Healthcare, 57 F.3d 350, 354 (3d Cir. 1995).

---

[5] Engle alleges in her wrongful-discharge claim that the termination of her employment violated public policy "as more fully set forth in the FMLA and The Americans With Disabilities Act" (Compl. ¶ 58), but does not actually allege a violation of federal law.

### B.    "Express" and "complete" ERISA preemption

Before addressing whether ERISA completely preempts Engle's claim, however, the Court notes that ERISA can preempt a state-law claim in two ways: (1) "express preemption" under § 514; and (2) "complete preemption" under § 502.  Waldschmidt v. Aetna U.S. Healthcare, 225 F. Supp. 2d 560, 562-63 (W.D. Pa. 2002).  These two preemption doctrines are distinct, Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166, 171 (3d Cir. 1997), and only the latter is sufficient to trigger the exception to the well-pleaded-complaint rule.  Id.  It is therefore important in this case to ensure that the state-law claims are completely preempted, not simply expressly preempted under § 514.

#### 1.    Express preemption

ERISA § 514(a) provides that any state law that "relate[s] to any employee benefit plan," 29 U.S.C. § 1144(a), is preempted.  This provision preempts state-law claims that are related to ERISA plans, and is a substantive defense to state-law claims, but does not provide federal courts with an independent basis for subject-matter jurisdiction.  Metropolitan Life, 481 U.S. at 63; Dukes, 57 F.3d at 355 (holding that a federal court is without removal jurisdiction even where "plaintiff's state claim is arguably preempted under § 514(a)").

#### 2.    Complete preemption

ERISA § 502, on the other hand, is not strictly a "preemption" provision; it is the civil-enforcement provision of ERISA.  Yet, the Supreme Court has construed § 502 as preempting "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy."  Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004); Barber v. UNUM Life Ins. Co., 383 F.3d 134, 140 (3d Cir. 2004).  As the Supreme Court has held, when § 502

preempts a state-law cause of action, removal of the state-law claim is appropriate "even if pleaded in terms of a state law, [because the claim] is in reality based on federal law." Davila, 542 U.S. at 208 (quoting Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8 (2003)).

A claim is completely preempted under ERISA § 502 where two requirements are met: (1) where a plaintiff could have brought the claim under § 502(a); and (2) where "no other legal duty supports [her] claim." Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400 (3d Cir. 2004) (citing Davila, 542 U.S. at 210). Both of these requirements – ERISA-availability and ERISA-dependence – must be satisfied for a state-law claim to be completely preempted. In this case, both are satisfied.

### a. ERISA-availability

The ERISA-availability requirement is met because Engle's retaliation claims could have been brought under ERISA's civil-enforcement provisions, specifically ERISA § 510.[6] Section 510 provides, inter alia:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . The provisions of [ERISA § 502] shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. This provision is designed to "prevent unscrupulous employers from discharging or harassing their employees in order to prevent them from obtaining their statutory

---

[6] Within this circuit, claims under § 510 are enforced pursuant to § 502 and therefore ERISA "completely preempts" any state-law claims attempting to enforce rights under § 510. Wood v. Prudential Ins. Co., 207 F.3d 674, 677-79, 678 n.5 (3d Cir. 2000) (citing Ingersoll-Rand Co. v. McClendon, 498 U.S 133, 145 (1990)).

or plan-based rights." Zipf v. AT&T, 799 F.2d 889, 891 (3d Cir. 1986).

Section 510 prohibits employers from taking adverse employment actions with a "benefits-defeating" motive. Wood v. Prudential Ins. Co., 207 F.3d 674, 677 (3d Cir. 2000) (unlawful to terminate employment to avoid paying benefits). Thus, employers may not take actions with the intention of interfering with ERISA-protected rights. Moreover, because "§ 510 protects employees from being terminated for exercising rights to ERISA-protected benefits regardless of whether they have received such benefits prior to termination," Kowalski v. L & F Prods., 82 F.3d 1283, 1288 (3d Cir. 1996), a plaintiff does not need to demonstrate actual entitlement to ERISA-protected benefits.

In Count II of her complaint, Engle alleges: (1) that "Defendant improperly and wrongfully placed undue pressure on her to return to work in an attempt to intimidate her from pursuing a proper appeal of the denial of her disability benefits;" (2) that "the actions of Defendant were an attempt to retaliate against Plaintiff for properly pursuing her rights as afforded under the short term and long term disability policies"; and that "(3) Defendant's actions were performed maliciously and with the sole purpose of retaliation and intimidation in Plaintiff's proper exercise of her rights afforded under the employee manual and the aforementioned disability policies." (Compl. ¶¶ 63-65.) The Court reads these allegations as indicating that MHS's actions were motivated by a desire to dissuade her from trying to receive disability benefits. Substantively, these claims fit squarely within the § 510 prohibition of taking adverse employment actions with a "benefits-defeating motive."

Yet Engle insists that MHS's retaliation must fall outside the scope of § 510 because:

> Plaintiff is not claiming that Defendant had wrongfully discharged
> her in order to avoid paying benefits. Termination to avoid paying

9

> benefits is not the same as a tortious, retaliatory act. Instead, she alleges her discharge and other of Defendant's actions were retaliatory and designed to intimidate her into not pursuing her appeal of the denial of the benefits. <u>The plan itself is not implicated directly nor is the plan even indirectly affected</u>.

(Doc. No. 13, at 17) (emphasis added). However, as described above, the scope of ERISA § 510 extends beyond simply terminating employment to avoid paying benefits. The section specifically prohibits an employer from acting "for the purpose of interfering with the attainment of any right to which such participant <u>may become entitled</u> under [an ERISA plan]." 29 U.S.C. § 1140 (emphasis added). Thus, Engle's allegations that MHS attempted to "intimidate her into not pursuing her appeal of the denial of benefits" fall within ERISA's prohibition of "prevent[ing] employees] from obtaining their statutory or plan-based rights." <u>Zipf</u>, 799 F.2d at 891.

Accordingly, the Court finds that the ERISA-availability requirement is met in this case. Still, the Court must determine whether the second requirement of complete preemption – ERISA-dependence – is satisfied in this case.

### b.     ERISA-dependence

The second requirement for "complete preemption" is ERISA-dependence: where "no other legal duty supports [her] claim." <u>Pascack Valley Hospital</u>, 388 F.3d at 400. Establishing this requirement is necessary because "ERISA does not preempt state laws that might afford parallel relief from the same set of facts as long as the state law claims do not protect those rights protected by § 510 of ERISA." <u>Trotter v. Perdue Farms, Inc.</u>, 168 F. Supp. 2d 277, 283 (D. Del. 2001) (citing <u>John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank</u>, 510 U.S. 86, 98 (1993)). Thus if a plaintiff's "state law claims are predicated on a legal duty that is independent

of ERISA," Pascack Valley Hospital, 388 F.3d at 402, then they are not subject to complete preemption. Davila, 542 U.S. at 210; cf. Caterpillar Inc. v. Williams, 482 U.S. 386, 394-95 (1987) (breach-of-contract claims not completely preempted under the Labor Management Relations Act when employers had legal obligations under contracts with individual employees that were distinct from those obligations under collective-bargain agreement governed by the Act). On the other hand, if liability under state-law claims "derives entirely from the particular rights and obligations established by the [ERISA] benefit plans," id. at 213, then those claims are completely preempted, and the complaint is subject to removal.

      In this case, Engle's claims are ERISA-dependent. She alleges that MHS's actions were taken for "the sole purpose of retaliation and intimidation" for exercising her right to appeal the denial of her disability benefits. Although she argues that her claim is not dependent on ERISA because "the Court's inquiry would not be directed to the plan in deciding the case and the plan itself does not establish liability" (Doc. No. 13, at 12), her argument fails. Even if she is correct that "[i]t is not necessary for the court to examine the contents of the plan to decide whether Defendant is liable" (Doc. No. 13, at 16), the inquiry will still turn on the source of MHS's legal obligation. In the case at bar, MHS's legal duty to avoid retaliating against Engle for pursuing disability benefits is grounded solely in ERISA. Accordingly, whether or not the Court must ultimately look to the plan to determine whether Engle was entitled to benefits, a determination that MHS improperly retaliated against her necessarily implicates the employer's obligations under ERISA § 510.

      The Court finds that the ERISA-dependence requirement is met in this case. As such, because both of the requirements for complete preemption are met in this case, this Court has

subject-matter jurisdiction, and the motion to dismiss is properly before this Court.

## III.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  A court must "examine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Hill v. Borough of Kutztown, 455 F.3d 225, 233 (3d Cir. 2006) (quoting Delaware Nation v. Pennsylvania, 446 F.3d 410, 415 (3d Cir. 2006)).  However, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997).  Rather, a court must only determine "whether the claimant is entitled to offer evidence to support the claims."  Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc., 280 F.3d 278, 283 (3d Cir. 2002) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997)).

## IV.    DISCUSSION

Engle's complaint contains five counts: (1) wrongful discharge; (2) retaliation; (3) breach of contract; (4) harassment; and (5) negligence.  MHS moves to dismiss each of these counts on varied grounds.  The Court will address each in turn.

### A.    Count I - Wrongful Discharge

In Count I of her complaint, Engle alleges that MHS's termination of her employment violated Pennsylvania public policy.  Specifically, she alleges that her discharge was wrongful

"in that Plaintiff suffered from a permanent disability and should not have been subject to termination by Defendant while there was an ongoing claim for disability benefits under Defendant's own policies and procedures." (Compl. ¶ 58.) MHS moves to dismiss Count I on several grounds: (1) that Engle has failed to allege that she was an at-will employee; (2) that statutory remedies available under the Americans with Disabilities Act ("ADA"), Family Medical Leave Act ("FMLA"), and Pennsylvania Human Rights Act ("PHRA"), 43 P.S. § 951 et seq., preempt Engle's common-law wrongful-discharge claim; and (3) that Engle has failed to exhaust administrative remedies available under the PHRA and the ADA, thereby barring relief. The Court will address the first two grounds, but because the Court finds that Count I is preempted by statute, the Court will not reach the issue of exhaustion.

        1.    **At-will employment**

MHS argues that a careful reading of the complaint reveals that Engle was a member of a union, and did not serve as an at-will employee. Under Pennsylvania law, if MHS is correct that Engle was covered under a collective-bargaining agreement that protected her from wrongful termination, or was somehow otherwise not employed at-will, she is not entitled to pursue a common-law wrongful-discharge claim. Harper v. Am. Red Cross Blood Servs., 153 F. Supp. 2d 719, 721 (E.D. Pa. 2001); Phillips v. Babcock & Wilcox, 503 A.2d 36, 39 (Pa. Super. Ct. 1986).

In support of MHS's position that Engle was not an at-will employee, MHS points to paragraph 12(F) in the complaint, which reads: "There was no union representative there that day, which in the past has been a ritual for harassment of employees in the kitchen." (Compl. ¶ 12(F).) According to MHS, this language establishes a reasonable inference that Engle "was a

union member and that the terms and conditions of her employment with MHS therefore were governed by a collective bargaining agreement." (Doc. No. 6, at 14.)

Engle, on the other hand, argues that under Pennsylvania law she is presumed to be an at-will employee. See McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287 (Pa. 2000). Furthermore, Engle points to language in the MHS Employee Handbook, stating that "all School employees are employees on at 'at will' basis – which means that an employee may resign or be subjected to termination at any time." (Doc. No. 13, at 11.) This language strongly suggests that Engle's employment status was "at will."

Reading the complaint in the light most favorable to Engle for the purposes of the instant motion, the Court must presume that Engle was an at-will employee, and not union-represented, and is therefore not barred from pursuing a wrongful-discharge claim.

## 2. Statutory preemption of Engle's wrongful-discharge claim

MHS's second challenge to Count I of the complaint is that Engle's common-law wrongful-discharge claim cannot be maintained because it is preempted by existing statutory remedies. For example, MHS argues, statutory remedies available under the PHRA preempt common-law wrongful-discharge claims predicated upon discriminatory termination on the basis of disability. Nix v. Nationwide Ins. Co., 2005 U.S. Dist. LEXIS 5824, at *6-7 (E.D. Pa. Apr. 6, 2005); Clay v. Advanced Computer Applications, 559 A.2d 917, 918 (Pa. 1989).

Engle does not dispute that wrongful-discharge claims predicated upon injuries that can be remedied under the PHRA, ADA, or FMLA would be preempted. Engle's position, instead, is that her employment was terminated because she sought disability benefits, not because she was disabled. To the extent that Engle's claim is predicated upon a theory of wrongful discharge

for seeking disability benefits, as discussed above, ERISA completely preempts Engle's claim. Otherwise, the Court entirely agrees with MHS that if Engle's claim is based upon disability discrimination or some other federal statute, or upon ERISA, she cannot state a common-law wrongful-discharge claim.

In her brief, Engle suggests that she wishes to amend the complaint to supplement her claim based upon the Pennsylvania Workers' Compensation Act, 77 P.S. § 1 et seq. Although Pennsylvania courts recognize wrongful-discharge claims predicated upon a retaliatory discharge for filing a workers'-compensation claim, Schick v. Shirey, 716 A.2d 1231, 1238 (Pa. 1998), it is not at all clear the Engle can state such a claim, and has not filed a motion for leave to amend, nor has she provided a proposed amended complaint. See Local Rule 15.1.

Thus, Engle's wrongful-discharge claim is (as currently pleaded) preempted by statute, and the Court will dismiss Count I. However, because she has provided an alternative basis on which she might state a claim, the Court will allow Plaintiff to file a motion for leave to amend the complaint.[7]

### B. Count II - Retaliation/Adverse-Employment Decision

Count II of Engle's complaint includes allegations that MHS improperly retaliated against her for pursuing disability benefits. As more fully discussed above, MHS argues that this claim is completely preempted by ERISA, and the Court agrees. The Court will therefore dismiss Count II. However, because the Court will allow Plaintiff to file a motion for leave to amend the complaint, she may include an allegation of an ERISA violation as part of her

---

[7] If Engle elected to file such a motion, MHS would be permitted, of course, to file in opposition.

proposed amended complaint.

### C. Count III - Breach of Contract

Count III of Engle's complaint alleges that MHS breached "an express or implied contract pursuant to the employee manual, which manual set forth the terms and conditions of Plaintiff's employment." (Compl. ¶¶ 69-71.) MHS moves to dismiss Engle's breach-of-contract claim on grounds that the handbook did not create an enforceable contract. In Pennsylvania, it is settled law that the existence of an employee handbook does not by itself create an enforceable contract. See Martin v. Capital Cities Media, Inc., 511 A.2d 830, 834-42 (Pa. Super. Ct. 1986). An employee handbook is enforceable as a contract only when "a reasonable person in the employee's position would interpret its provisions as illustrating the employer's intent to overcome the at-will rule and be legally bound by the representations contained in the book." Hartman v. Sterling, Inc., 2003 WL 22358548, at *13 (E.D. Pa. Sept. 10, 2003).

In this case, Engle does not dispute the fact that the employee handbook does not evince an intent to overcome the at-will rule; indeed, as discussed above in relation to Count I, Engle has conceded that "Defendant's employee handbook explicitly states that, unless it is agreed upon otherwise, 'all School employees are employees on at 'at will' basis – which means that an employee may resign or be subjected to termination at any time.'" (Doc. No. 13, at 11.) Moreover, preceding the language quoted by Engle is an express disclaimer of any intent to be contractually bound: "The MHS Employee Handbook is not a contract, nor does it attempt to address each and every situation, which may arise."[8] Thus, the "explicit disclaimer of the

---

[8] Attached to its brief, MHS includes a copy of the employee handbook and asserts that the Court may consider the handbook in connection with the adjudication of the instant motion because Engle's complaint explicitly relies on the handbook. (Doc. No. 6, at 24 n.8.) Engle asks

16

formation of a contract nullifies plaintiff's claim for breach of contract." Landmesser v. United Air Lines, Inc., 102 F. Supp. 2d 273, 280 (E.D. Pa. 2000).

The case cited by Engle in her brief in opposition to Defendant's motion to dismiss, Caucci v. Prison Health Services, Inc., 153 F. Supp. 2d 605, 611 (E.D. Pa. 2001), is inapposite to this case. In Caucci, the court denied MHS's motion for summary judgment where the handbook "constitute[d] a unilateral offer of employment which the employee accept[ed] by the continuing performance of his or her duties." Id. Here, Engle has not alleged that the handbook included a "promissory offer which call[ed] for [Engle] to accept by rendering a performance." Id.

Engle alleges that the terms of the employee handbook were not followed, but she has not pleaded any allegations that would support a claim that the employee handbook either: (1) evinced an intent to overcome the at-will presumption; or (2) included a promissory offer necessary for a unilateral contract. Therefore, Engle cannot state a breach-of-contract claim, and Count III will be dismissed.

### D.   Count IV - Harassment

Engle's complaint alleges that she "suffered embarrassment, humiliation and mental and emotional stress" as a result of MHS's harassment of her. (Compl. ¶ 77.) MHS argues that Pennsylvania does not recognize a common-law cause of action for harassment. (Doc. No. 6, at 26.); see also DeAngelo v. Fortney, 515 A.2d 594, 596 (Pa. Super. Ct. 1986); Abdullah v. Fetrow, 2006 U.S. Dist. LEXIS 27448, at *23 (M.D. Pa. May 8, 2006). In response, Engle stated

---

that the Court not consider the document. This position is peculiar, as the complaint explicitly refers to the employee handbook as the basis for the contract claim and Engle attached part of the handbook to the complaint. Consideration of the language of the employee handbook therefore does not convert the motion to dismiss into a motion for summary judgment. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

17

that she "agrees with Defendant that there is no common law action of harassment available in Pennsylvania and asks the Court's leave to amend the complaint to replace the count of harassment with one alleging intentional infliction of emotional distress." (Doc. No. 13, at 19.) Engle has not filed a motion for leave to amend, nor has she provided a proposed amended complaint. The Court will therefore dismiss Count IV, but will allow Engle to file a motion for leave to amend her complaint as described above.

### E.   Count V - Negligence

In Count V, Engle alleges that MHS "was negligent in failing to properly supervise and educate its employees and further failing to properly discipline its supervisory personnel with respect to the treatment of Plaintiff." (Compl. ¶ 81.) MHS argues that Engle's negligent-supervision claim is barred by statutory remedies available under the PHRA and the PWCA. (Doc. No. 6, at 27-30.) Engle does not dispute that as currently pleaded, the complaint fails to state a claim upon which relief can be granted. Engle, instead, "requests leave of the Court to amend the Complaint to include a count of negligent supervision . . . ." (Doc. No. 13, at 16.) Again, because Engle has not filed a motion for leave to amend or provided a proposed amended complaint, the Court will dismiss Count V, but will allow her to file a motion for leave to amend the complaint.

## V.   CONCLUSION

For the foregoing reasons, the Court will dismiss all counts, but will allow her to file a motion for leave to amend the complaint in accordance with Local Rule 15.1. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANICE ENGLE, n.k.a. : | |
| JANICE KAYLOR, : | Civil Action No. 1:06-CV-01093 |
|     Plaintiff, : | |
| : | (Chief Judge Kane) |
| v. : | |
| : | |
| MILTON HERSHEY SCHOOL, : | |
|     Defendant. : | |

### ORDER

**AND NOW**, on this 19th day of January, 2007, upon due consideration of Defendant's motion to dismiss (Doc. No. 3), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that Defendant's motion is **GRANTED**. **IT IS FURTHER ORDERED** that Plaintiff shall be permitted to file a motion for leave to file an amended complaint in accordance with Local Rule 15.1 within ten (10) days from the date of this Order. In the event Plaintiff fails to file such a motion in accordance with this order, the case shall be **DISMISSED** without further notice.

 S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania